Kennedy v. The Commonwealth.

---

CASE 89—INDICTMENT—APRIL 9.

# Kennedy v. The Commonwealth.

APPEAL FROM ROCKCASTLE CIRCUIT COURT.

1. Upon an application for a change of venue, when all the adjoining counties in the district have been objected to, it is proper to send the case to an adjoining county in another district.

2. An error in deciding as to what county the case is to be sent, does not render invalid the proceedings of the court to which the change is made.

3. If the clerk of a court is satisfied that a judge cannot be elected because there are no attorneys present who are qualified to vote, he is authorized to certify the fact, without going through the useless form of an election.

4. Where the record shows a case authorizing the Governor to commission a special judge, this court will not go behind the commission to inquire whether or not the certificate of the clerk is defective or not.

5. The appellant is bound by his agreement that, as a matter of fact, a judge could not be procured by election to try the case.

6. The statute authorizing the Governor to commission a judge of a circuit court out of the district to preside on the trial of a case, is constitutional.

7. This court knows judicially who are the judges of the circuit courts in this state.

8. It is not error to refuse a continuance asked for because of the absence of a witness residing out of the state. as it is improbable that he could be produced at the next term, and the facts he could prove could be proved by other witnesses

R. & W. O. BRADLEY, WELCH & SAUFLEY, AND T. P. HILL FOR APPELLANT.

1. The special judge who tried the case had no right to preside, because he is judge of another district. (Cooley on Const. Law, 181; Gen. Stat., 187, 862; 3 Met., 574; art. 4, sec. 2, Const. Ky.)
2. A continuance should have been granted. (Arch. Crim. Prac. and Plead., 568; 7 Bush, 121.)
3. The evidence of Dunlap, &c., was competent. (1 Met., 379; Kennedy v. Commonwealth, 14 Bush, 361.)
4. Appellant did not receive a fair and impartial trial. (Hardin, 174; 4 Bibb, 191; 3 Ib., 347; subsec. 7, sec. 271, Civil Code.)
5. The court erred in its instructions. (2 Duv., 328; 6 Bush, 312; 8 Ib., 486; Green. on Ev., vol. 1, 462; Mag. Charta, ch. 29; Bill of Rights, sec. 12.)

C. A. HARDIN AND P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. There was no error in regard to the juror Metcalfe. (Arch. Crim. Prac. and Pl., 626; 15 Georgia, 535; 3 Green's Rep., 204; 14 Georgia, 709.)
2. There is no error in the instructions.
3. The special judge was fully authorized by the Governor's commission to preside at the trial.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

This is the second appeal in this case. The opinion in the former appeal may be found in 14 Bush, page 340.

On the return of the cause to the Garrard circuit court, which is in the 8th district, the appellant moved, upon proper petition and affidavits, for a change of venue, and also objected to all the adjoining counties in that district, but did not object to Rockcastle, an adjoining county in 15th district. By consent of the appellant and his counsel and the attorney for the Commonwealth, the venue was ordered to be changed to Rockcastle, and it was further agreed, as shown by the record, that Hon. J. C. Wickliffe, judge of the 7th district, who presided at the former trial under a commission from

the Governor appointing him to try the case, should preside at the trial.

At the last January term of the Rockcastle circuit court Judge Wickliffe did not attend. Hon. W. H. Randall, the judge of that district, was present, holding the court, and when this case was called the appellant filed the necessary affidavits to unseat the judge, and the Governor commissioned Hon. S. E. DeHaven to try the case. A trial was had, which resulted in a verdict and judgment convicting the appellant of the crime of manslaughter, and he has again appealed, and urges many grounds for a reversal of the judgment.

His first point is, that the order changing the venue is void. This contention is based mainly on the ground that the court had no power to send the case to a county outside of the district, there being one or more in the district not objected to, and that the consent of the appellant to have the case sent to Rockcastle does not bind him, and did not authorize the change that was made.

The statute provides that when grounds for a change of venue are made out the court shall "order the trial to be had in some other *adjacent* county to which there is no valid objection," and "if objections are taken and sustained to all the *adjoining* counties, then the change to be made to the nearest county to which there is no valid objection, giving preference to counties of the same judicial district. (Sec. 1, art. 4, chap. 12, Gen. Stat.)

These provisions construed together seem to contemplate that a change of venue shall always be made to an *adjoining* county, unless objection be taken to all of such counties, and it is only when there is no adjoining county to which

objection has not been taken and sustained that the change is "to be made to the nearest county to which there is no valid objection." As long as there is one or more adjoining counties in the district to which objection has not been sustained, preference should be given to such counties, and when there is no adjoining county either in the district or out of it to which objection has not been taken and sustained, preference should be given to counties in the district.

We are therefore of the opinion, that all the adjoining counties in the district having been objected to and the objection sustained, it was proper to send the case to an adjoining county in another district, and Rockcastle being such a county, the order changing the venue to that county was proper, independently of appellant's consent, and we need not express any opinion as to whether if it were otherwise he would be bound by his agreement.

We do not wish, however, that what we have said in reference to the statute regulating changes of venue shall be understood as an intimation that if the change had been made to a county not adjoining that in which the prosecution was commenced, that it would have affected the jurisdiction of the court to which the change was made. The court ordering the change has jurisdiction to decide to what county the change shall be made, and an error in that respect would not render invalid the proceedings of the court to which the change was made.

Judge Wickliffe was commissioned to try the case in Garrard, and had no power to follow it to Rockcastle, in another circuit; Judge Randall therefore properly presided until he was unseated by the affidavits filed for that purpose, and even afterwards, in the absence of the special judge, it was proper that he should make all necessary and proper

Kennedy v. The Commonwealth.

orders to have the case in readiness for a trial when the special judge should be in attendance.

After Judge Randall was sworn off the bench, the attorney for the Commonwealth and the appellant and his attorneys agreed that, in consequence of the employment in the case of the attorneys in attendance on the court, a judge to try the case could not be procured by election, and that the clerk should certify that fact to the Governor, and that agreement was entered on the record.

What purports to be the certificate of the clerk is copied into the transcript, and it is claimed that it is so defective that it did not authorize the Governor to commission a special judge.

There are two sufficient answers to this objection—

*First.* The certificate is not properly a part of this record. The order of the court, which is a part of the record, is regular, and shows that the clerk was ordered to certify that a judge could not be obtained by election.

*Second.* The Governor has acted upon the certificate, and we cannot go behind his commission; the record showing a case proper for the exercise of the power conferred upon him by the statute.

The statute provides, that when the regular judge has been sworn off the bench, and "a judge cannot be procured by election, the clerk shall forthwith certify the facts to the Governor of this Commonwealth, and he shall commission some circuit judge of another circuit to attend and preside in said court, on a day to be fixed by the Governor, to try said criminal or penal prosecution."

It is contended that, under this provision, it can only be ascertained whether a judge can be procured by election by making an actual experiment. In other words, that how-

ever apparent it may be to all present that there is not a
single attorney in attendance on the court who is not en-
gaged in the cause (only those not so engaged can vote), that
the clerk must go through the idle ceremony of opening a
poll or preparing ballots and calling voters, when he knows
there is no one present qualified to vote, before he can law-
fully certify that a judge cannot be procured by election.
Such a proceeding would illy comport with the dignity and
gravity of official proceedings.

The law has imposed upon the clerk the duty to decide
whether a judge can be procured by election. He is to
decide who, and whether any one present, is legally qualified
to vote or to serve if chosen, and whether a person chosen
is eligible to the office; and when he is satisfied that a judge
cannot be procured by election, because there is no one
present qualified to vote or to serve as a judge, he is justi-
fied in certifying that "a judge cannot be procured by
election."

We are therefore of the opinion that the record is suffi-
cient to show, without the aid of the agreement, that the
clerk decided that a judge could not be elected.

But if it did not, we have no hesitation in deciding that
the appellant is bound by his agreement that, in matter of
fact, a judge could not be procured by election.

There is a broad distinction between an admission of a
fact necessary to put the machinery of the law in motion, to
the end that a trial may be had, and the consent of one
charged with a felony to be tried by less than twelve jurors,
or that one not legally qualified shall preside as judge at the
trial.

It might be contended, with much greater show of reason,
that because the right to life and liberty is inalienable, and

no man can be deprived of either except by the law of the land, that one indicted for a felony cannot be bound by solemn admission in court of any fact which conduces to prove his guilt; yet no one doubts that he may be convicted upon his admissions made in court.

It is next contended that Judge DeHaven had no legal authority to preside at the trial or to render judgment on the verdict. This position is sought to be maintained upon two grounds: (1) that the statute which authorizes the Governor to commission a judge of the circuit court to preside in the trial of a cause outside of his district is unconstitutional; and (2) that if it is not, the commission does not show that the person commissioned to try the case was at the time a circuit judge, and that this court cannot know judicially that he was.

The constitution requires the General Assembly to provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside. (Sec. 28, art. 4.)

The manner of providing for the contingency here contemplated is left wholly to the discretion of the General Assemby, provided no other provision of the constitution be violated.

That instrument requires a circuit judge to be elected in each district, and provides that no one shall be eligible to the office who has not resided in the district two years. But these provisions apply to the regular judges, and do not apply to special judges; nor is there anything in the constitution which forbids the legislature, in executing the constitutional mandate, to provide for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside, from directing the

Governor to commission a judge of another circuit to attend and preside in a particular cause.

We know judicially that there is a Samuel E. DeHaven who is one of the circuit judges of this state. It was the duty of the Governor to commission a circuit judge to try this case; he commissioned a person named Samuel E. DeHaven, and we must presume he did his duty, and that the person commissioned is the person of that name who is a circuit judge.

The appellant moved for a continuance on account of the absence of a witness who now resides in the state of Kansas.

The only facts which it was alleged the witness would prove related to the character of the deceased and threats made by him against the life of the appellant. The witness resided in Garrard county, where the killing occurred, until after the former trial, and was examined on behalf of the Commonwealth. That he would make statements deemed important to the defense was claimed to be recently discovered. The witness and the appellant had been unfriendly, and, according to the statement in the affidavit, the witness intentionally concealed from the appellant facts he is now expected voluntarily to come back to Kentucky to prove.

There is nothing to show that his unfriendly feeling toward the appellant does not still exist, or to induce the belief that he could have been procured by the next term of the court. Moreover, that the deceased was a man of desperate character, and had often threatened the life of the appellant, was proved by a large number of witnesses; and, in view of this, and the improbability that the witness could have been produced if a continuance had been granted, there was no error in overruling the motion for a continuance.

Kennedy v. The Commonwealth.

In respect to the other objections taken to the rulings of the court, we may remark, without going over them in detail, that they have been carefully considered, and are not regarded as having been prejudicial to the rights of the appellant.

He was convicted of manslaughter only. His defense, so far as that crime was concerned, rested alone upon the assumption that, at the time he shot and killed the deceased, he believed, and had reasonable ground to believe, that he was *then and there* in danger of losing his life, or of suffering great bodily harm at the hands of the deceased.

The evidence upon that point was clear, explicit, and uncontradicted. No witness testified to any fact even conducing to prove that there were the slightest grounds for believing that the deceased was about then and there to do the appellant any injury whatever. The evidence showed that the deceased had, but a few minutes before the shooting occurred, declared in the presence of the appellant that he was unarmed, and that he was searched in the court-room, where the appellant was, and the declaration found to be true.

Under these circumstances, the utmost effect of evidence of the character and threats of the deceased was to mitigate but not to excuse the killing; and it cannot reasonably be supposed that a little more or less of the same kind of evidence would have an appreciable influence upon the verdict.

The facts have been twice heard by a jury, and the appellant was found guilty by each. He has had a full and fair opportunity to meet the grave charge of having unlawfully killed a fellow-man, and we are well satisfied that none of the alleged errors prejudiced his rights, and the judgment must be affirmed.