CASE 24.—ACTION BY J. W. CAMMACK AGAINST FRANK P.
    JAMES, AUDITOR PUBLIC ACCOUNTS.—June 17,
    1910.

## James, Auditor, v. Cammack.

Appeal from Franklin Circuit Court. ·

GEORGE C. WEBB, Special Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Judges—Special Judges—Statutes—Validity.—A statute authorizing regular circuit court judges to sit as special judges when the regular circuit judges fail to attend or' cannot preside is not violative of Const. section 165, forbidding the holding of incompatible offices, since the duties of a special judge are not incompatible with those of a regular judge.

2.  Officers—Compensation— Constitutional Provisions— Mandatory Nature.—Const. section 235, providing that the salaries of public officers shall not be changed during the terms for which they are elected, is mandatory and cannot be abrogated or minimized, and a statute evading the provision is invalid. ·

3.  Judges—Duties—Salary.—Under Const. sections 125, 126, 128-130, providing for a circuit court in each county with jurisdiction as established, subject to change by the Legislature, for the establishment of judicial circuits, and for the election and qualification of circuit judges, a circuit judge must without additional salary discharge the duties growing out of the jurisdiction of the court though the jurisdiction is increased during his term, but there may be duties imposed on the circuit judge as an individual which do not belong to the jurisdiction of the court, and when that is done additional compensation may be provided for.

4.  Judges—Special Judges—Salary.—A statute authorizing regular circuit court judges to sit as special judges when the regular circuit judges fail to attend or cannot preside, enacted under Const. section 136, empowering the Legislature to provide for holding circuit courts when the judge fails to

attend or cannot preside, imposes on regular judges the duties of a special judge which are not a part of the duties of a regular judge, and the statute may provide compensation to regular judges for discharging such duties notwithstanding section 235, providing that the salaries of public officers shall not be changed during their terms of office.

5. Constitutional Law—Judicial Powers—Motive or Wisdom of Law.—The court in determining the constitutionality of a statute may not consider the wisdom or unwisdom of the statute, and the Legislature having power to adopt a statute must determine the propriety of so doing.

JAMES BREATHITT attorney general and JOHN F. LOCKETT assistant attorney general for appellant.

EDELEN & DAVIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—
Affirming.

This action involves the constitutionality of an act of the General Assembly of the commonwealth of Kentucky, authorizing the regular circuit judges to act as special judges, and fixing their compensation for the additional duties discharged by them in so doing. The act in question is as follows:

"Be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. That the regular circuit judges of the commonwealth of Kentucky, except those whose district embrace a city of either the first or second class, and wherein a court of continuous session is held, be, and they are, hereby authorized to act as special judges of the circuit courts of this commonwealth.

"Sec. 2. In the absence of the regular judge of any circuit court in this commonwealth, or when he cannot preside, in any particular case or cases, if the parties cannot agree upon an attorney who is present to act as judge, and who shall receive no compensa-

tion for his services, the clerk shall at once notify the Governor, who, in turn shall immediately notify one of the circuit judges mentioned above who is not then engaged in holding a regular or special term of court in his district, and it shall be the duty of said circuit judges so notified by the Governor, to hold the court, or try the case, and the judge so notified by the Governor shall have all the powers of a regular judge of said court.

"Sec. 3. It shall be the duty of the clerk of each circuit court held by a judge whose district does not embrace a city of the first or second class, wherein a court of continuous session is held, to notify the Governor in writing immediately upon the final adjournment of each regular or special term of his court and also of the time when the next regular or special term to be held by said circuit judge shall begin, and it shall be the duty of the Governor to keep a roster of said circuit judges showing when each of them is not engaged in holding a regular or special term of court in his district, and the Governor in so notifying the circuit judges of their selection to hold any such court or to try any case, shall do so in such manner as to divide such special judge's work as equally as practicable between all the regular judges aforesaid.

"Sec. 4. It shall be the duty of the Governor, immediately upon this act taking effect, to issue a commission to each of said circuit judges, commissioning them as special judges of this commonwealth so long as they shall be regular judges thereof, and when any of said judges shall preside out of his district in holding a court or in trying a case, as provided in this act, he shall have his said commission recorded upon the order book of said court. Before entering upon the discharge of his duties every special judge must, in

addition to the oath prescribed by the Constitution, take an oath as follows: 'I, A. B., do solemnly swear (or affirm) that I will administer justice without respect of persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge all the duties incumbent upon me as judge, according to the best of my ability.' Said oaths, together with the certificate of the officer before whom same were taken showing the date thereof, shall be indorsed in writing on his commission.

"Sec. 5. The selection of special judges, the reason for such selection, and the fact that the requisite oaths have been taken, must be entered upon the order book of the court.

"Sec. 6. Such special judges shall respectively receive an annual salary of twelve hundred dollars payable monthly out of the treasury.

"Sec. 7. All the laws or parts of laws in conflict herewith, and particularly 971 of the Kentucky Statutes, are hereby repealed."

Two grounds are urged by appellant for holding that the act is unconstitutional: First, that the duties of a special judge are incompatible with those of a regular circuit judge, and, therefore, it falls within the inhibition of section 165 of the Constitution, which prohibits the holding of incompatible offices; and, second, that it is violative of section 235 of the Constitution, which provides that "the salaries of public officers shall not be changed during the terms for which they were elected. * * *"

The first objection may be disposed of in few words. In the cases of Mengel, Jr., Brother Co. v. Jackson, 94 Ky. 472, 22 S. W. 854, 15 Ky. Law Rep. 289, and Hughes v. Commonwealth, 89 Ky. 227, 12 S. W. 269, 11 Ky. Law Rep. 424, it was held that the

Legislature had the power and authority to provide that a regular circuit judge should sit as special judge when the regular judge of any district failed to attend, or, being in attendance, could not properly preside.

The second objection, that the act is inimical to section 235 of the Constitution, in that it increases the compensation of the officers after their election, is more serious. Undoubtedly, the provision in the Constitution against the changing of the salary of public officers after their election is mandatory as well as wise, and under no circumstances should the courts suffer or permit any consideration to induce them either to minimize or abrogate the fundamental law of the commonwealth. The Constitution of the state is the result of the wisdom, experience, and judgment of the constitutional convention, which was composed of some of the greatest and wisest and most patriotic men of the commonwealth. They gave to the duty imposed upon them by the people much patriotic labor, and the instrument as completed by them was submitted to the whole people, and ratified by a large majority of the qualified voters of the commonwealth. An instrument thus brought forth, as the result of wise and patriotic labor, and ratified by those possessing all of the political power of the commonwealth, should not under any circumstances be treated lightly or irreverently. Like the Ark of the Covenant of old, it bears within its bosom the hopes and interests of a whole people, and should be free from the touch of impious or profane hands. If, then, the act under consideration is an attempt to evade the constitutional provision against increasing the salaries of officers after they are elected, it should be condemned without hesitation, no matter how high its

beneficiaries may stand in the commonwealth or in the affections of the court whose duty requires it to render the judgment. But if, on the other hand, it can be established that the act does not fall within the inhibition of the Constitution, we should permit no sentimental fears of a profanation of its sanctity to prevent our doing justice to a deserving body of public servants who are notoriously underpaid.

At the outset, it is necessary to clearly distinguish between the judge and his office. Section 125 of the Constitution provides that ''a circuit court shall be established in each county now existing, or which may hereafter be created, in this commonwealth.'' Section 126: ''The jurisdiction of said court shall be and remain as now established, hereby giving to the General Assembly the power to change it.'' Section 128 provides for the establishment of judicial circuits, and section 129 for the election of judges of the various circuit courts so established. Section 130 provides the qualifications of the various circuit judges. Now, it is manifestly the duty of the circuit judge to discharge the duties which grow out of the jurisdiction of the court of which he is elected judge. Whatever belongs to that jurisdiction constitutes a part of his duty, and these duties he must perform for the whole term without any increase of salary. If the jurisdiction of his court is increased by the addition of a county or counties to his circuit, he must perform the additional duties growing out of the change without additional salary. If the jurisdiction is increased by the lowering of the minimum of jurisdiction so as to include those cases which, originally, were only cognizable in the courts of justices of the peace or county courts, still the circuit judge must discharge this additional labor without additional salary. But it is clear

James, Auditor, v. Cammack

that there may be duties imposed upon the judge as an individual which do not belong to, or constitute a part of, the jurisdiction of his court, and which may not be intended by the Legislature to be a part of it; and to this class clearly belong the duties of special judge. It is manifestly not a part of the regular jurisdiction of one circuit court that its judge should hold special court in a different district when the occasion for the discharge of such duties arise. If this were otherwise, then it would be beyond the authority of the Legislature to confer upon any other than the regular circuit judges of the state the authority to perform the duties of special judge. But we know that from the time of the adoption of the present Constitution until the enactment of the law under consideration, the duties of special judge have never been discharged by regular circuit judges, but, on the contrary, those duties have been discharged by attorneys at law selected in the manner required by the statute in force at the time.

The Constitution has plainly left it within the discretion of the Legislature to provide how the duties of special judge shall be discharged. Section 136 is as follows: ''The General Assembly shall provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside.'' If the act under consideration be held invalid, then immediately the authority to discharge the duties of special judge will devolve upon the appointees of the Governor from the lawyers of the commonwealth, under the act which the present law undertakes to repeal. So that, clearly, it is not a part of the jurisdiction of any circuit court of this commonwealth that its judge shall discharge the duties of special judge in any other district; and al-

though it may be within the competency of the Legislature to impose the duties of holding special court upon the regular judges, these duties are not a part of the regular jurisdiction of their courts, but entirely outside of that jurisdiction. They are duties which the Legislature can either impose upon the regular circuit judge of the state or not, as it sees proper. They are duties which the Legislature can with equal propriety impose, or authorize to be imposed, upon any other members of the bar of the state qualified to hold circuit court. A special judge need not be a regular circuit judge; he may be any person authorized by law to preside as special judge.

Now, then, if it be true that the duties of a special judge are not a part of the jurisdiction of a circuit court, or a part of the duties of a regular judge, then it seems to us, both upon reason and authority, that if the Legislature sees proper to impose upon the regular circuit judges these extra judicial duties, it may at the same time provide what in its opinion is a reasonable remuneration to these officers for discharging these extra duties; and the act which does so does not fall within the inhibition of section 235 of the Constitution.

The case of Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897, presented in principle the very question we have here. J. L. Rogers, the county attorney of Muhlenberg county, performed services under contract with the fiscal court which were not imposed upon him as a part of the regular duties of his office; and the question arose, whether he was entitled to receive extra compensation for these services, or whether, on the contrary, the constitutional provision (section 235) forbade his receiving any increase in salary after his election. We

there held, after a full discussion and review of all the authorities bearing upon the point, that, inasmuch as the services for which the county attorney was claiming remuneration were not a part of the regular duties of his office, he was entitled to the extra compensation. In the opinion it is said: "We are of opinion, therefore, that the facts of this case bring it within the rule that, where an officer or employe performs extra services outside of official duties and with which they have no affinity or connection, and which do not interfere with his official duties, he is entitled to compensation. Abbott on Municipal Corporations, vol. 2, sec. 686a."

The case of Flowers v. Logan County, 127 S. W. 512, also involved the same principle under discussion. There Flowers, a justice of the peace, performed services for Logan county, as road committee, courthouse committee and poorhouse committee, and the question arose, whether or not he could receive an increase of salary after his election as justice of the peace; and we there held that these services were not a part of the regular duties of the office of justice of the peace, and, therefore, the allowance was not prohibited by section 235 of the Constitution.

In the case of Converse v. United States, 21 How. 463, 16 L. Ed. 192, the same question we have here arose, as follows: A statute of the United States provided: "* * * No collector, surveyor, or naval officer, shall ever receive more than $400 annually, exclusive of his compensation as collector, surveyor, or naval officer, and the fines and forfeitures allowed by law for any service he may render in any other office or capacity." Converse, as collector, upon the order of the Secretary of the Navy, performed certain services not appertaining to the duties of his office as

collector, and claimed additional compensation therefor. In the opinion, Chief Justice Taney said on the subject of the extra compensation: "The agency was entirely foreign to his official duties, and far beyond the limits of the district to which the law confined his official duties and power. And as the department appointed him to perform a duty required by law, for which the compensation was fixed my law, and the money appropriated to pay it, he is entitled to the compensation given by law, if he has performed the duty; for the Secretary has no more discretionary power to withhold what the law gives, than he has to give what the law does not authorize. The agency and services performed in this instance had no more connection with his official duties and position than the purchase of a supply of shoes for the troops in Mexico, in the late war, would have been, in the absence of any other person authorized to make such a purchase. And if such a duty was requested or required of him by the head of the proper department, and performed, nobody would deny his right to compensation, if the law authorized and required the service to be done, and fixed the compensation for it."

The duties of a special judge are performed outside of the regular judge's district, and they have no legal connection with his regular duties. The duties of a special judge by the act in question are imposed upon the judge as an individual, and are not a part of the duties of his office. To remunerate him for these duties is not an increase of the salary of his office within the meaning of the constitutional inhibition. The Legislature may add them or not, as it pleases, and afterwards, if it sees proper, may repeal the act and deprive the judges of the opportunity to perform the extra labor and receive the extra salary

James, Auditor, v. Cammack

without in any wise changing their compensation within the meaning of section 235. So far as the performance of the duties of special judge are concerned, the regular judges stand as any other qualified individuals. They may be appointed by the legislative power or not, as the General Assembly deems proper. With the wisdom or unwisdom of this act this court has nothing to do. If it is within the competency of the Legislature, it is for it to decide upon the scheme which will best subserve the public interest in supplying special judges when necessity requires. The regular judge cannot demand that these duties shall be imposed upon him, nor can he successfully demand to retain them, after they have been imposed upon him, if the Legislature sees proper to provide other means of performing the duties of special judge.

We are of opinion that the learned special judge, who decided the case below, correctly held the act to be valid; and his judgment is therefore affirmed.

HOBSON, J. (dissenting). The act in question in substance provides that in all counties not embracing a city of the first and second class, the circuit judges of the state shall hold the courts when the regular judge is absent or for any reason cannot properly preside, and provides that they shall receive an annual salary of $1,200 a year, payable monthly out of the treasury for their services in holding the courts outside of their districts. Section 235 of the Constitution provides that the salaries of public officers shall not be changed during the term for which they were elected. The present act was passed after the election of the circuit judges now in office in the state; and the question before us is: Can the Legislature thus add $1,200 a year to their salaries during the term for which they were elected?

The provision of the Constitution that the salaries of officers shall not be changed during the term for which they are elected is mandatory. Although the Legislature may take from the officer half or all of the duties required of him by law at the time of his election, he is entitled to his full salary as fixed when he was elected; and although the Legislature may add to the duties of the office, however onerous the additional duties may be, the compensation of the officer cannot be changed during the term for which he was elected. The rule applies equally where by subsequent legislation additional duties are imposed on the officer as where by subsequent legislation he is relieved of the duties imposed upon him when elected, the purpose of the constitutional provision being to make the officer independent of the Legislature and to prevent appeals by officers to the Legislature to increase their salaries during the term for which they were elected. If the constitutional provision may be evaded by an act imposing additional duties on an officer and giving him additional compensation the purpose of the provision would be entirely defeated, for such a construction would open the door for the very evils it was designed to prevent.

The act in question simply imposes upon the circuit judges of the state an additional duty, and an attempt is made to evade the constitutional provision by providing that they shall have $1,200 a year for discharging these additional duties. Section 136 of the Constitution provides: "The General Assembly shall provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside." The same provision, verbatim, was contained in the Constitution of 1850. See section 28, art. 4. Under that Constitution, by an

act approved February 16, 1858, it was provided as follows:

"Sec. 2. When the defendant in a criminal prosecution makes and files with the clerk such an affidavit, as in the first section named, and the substitute judge theretofore or then chosen, to preside at his trial in lieu of the circuit judge, as now provided by law, from any cause cannot or fails to act as such, or no such election takes place, the case may be continued, and the clerk of the court shall enter the fact and cause of continuance on the record, and certify a copy of the entry to the governor of this commonwealth, who shall forthwith assign some other circuit judge to hold a special term of said circuit court as soon as possible—the time thereof to be fixed by such appointee—for the trial of the accused.

"Sec. 3. When the judge of a circuit court, in which a criminal prosecution is pending is so situated in respect to the case as in his opinion to render it unfit that he should preside at the trial, the same proceedings may be had as required in the second section hereof." See 1 Stanton's Rev. St. p. 234.

This provision was brought over into the General Statutes adopted in 1873, in these words: "Sec. 10. If the defendant make and file an affidavit supported as aforesaid, taking the same exception to a special judge, or a judge cannot be procured by election, the clerk shall forthwith certify the facts to the Governor of this commonwealth, and he shall commission some circuit judge of another circuit to attend and preside in said court, on a day to be fixed by the Governor to try said criminal or penal prosecution." See Gen. St. 1873, p. 187.

The General Assembly also, by an act approved March 9, 1888 (Laws 1887-88, c. 483) provided as follows:

"Sec. 1. If at any term of a circuit court the presiding judge thereof shall be absent, or, if in attendance, cannot properly preside in any cause for trial at such term, or if the bar shall decline or fail to elect a special judge or shall so request, it shall be lawful for any other circuit judge of this commonwealth to attend and hold such term of the court, and while so engaged he shall have and exercise all the powers and authority of the regular judge of said court.

"Sec. 2. Nothing in this act shall entitle a circuit judge so holding court in another district to any compensation in addition to his anual salary."

The act of February 16, 1858, was upheld in Baker v. Commonwealth, 10 Bush 592. The act of 1873 was upheld in Kennedy v. Commonwealth, 78 Ky. 447. The act of 1888 was upheld in Hughes v. Commonwealth, 89 Ky. 227, 12 S. W. 269, 11 Ky. Law Rep. 424. The court, after pointing out the previous legislation under the same constitutional provision which we now have, said: "But the Legislature may, in its discretion, adopt any other mode of holding circuit courts upon either of the two contingencies mentioned, and provision for the judge of another district to hold the court in such cases is just as clearly within the meaning and intendment of the Constitution as the selection of a special judge by attorneys, for the Legislature is not restricted to any specific mode of accomplishing the object."

It is true, the acts have not been in force since the adoption of the Kentucky Statutes, but what scheme should be adopted for the holding of the courts was entirely a matter of legislative discretion. Since the

act of 1902 (Acts 1902, c 81), the Governor has been empowered to appoint an attorney having the qualifications of a circuit judge to act as special judge, but the Legislature might in its discretion have authorized the Governor, as it had done before, simply to send one of the circuit judges of the state to hold the court. This clearly follows from the opinions above referred to, and the constitutional provision which gives the Legislature the discretion of selecting its own means for the holding of the circuit courts when the regular judge can not preside. If the acts above referred to had continued in force until the act in question was passed, could it be contended that this act does not change the compensation of the circuit judges during the term for which they were elected? But the fact that the acts were not in force when this act was passed is wholly immaterial. The Legislature, under the Constitution, has full power to regulate the duties of the circuit judges, and the fact that it has imposed on the circuit judges additional duties, does not warrant a change in their salaries during the term for which they were elected. To illustrate: Suppose this act had been passed before the election of these judges, and after their election the Legislature had provided as in the act of 1888, that they should receive no compensation for acting as special judge; would it be maintained that their compensation had not been changed during the term for which they were elected? If the Legislature could not, after their election, repeal this act so as to relieve them of the duties imposed by it, and deprive them of the salary given by it, how can it be maintained that after their election the additional compensation can be conferred upon them without violating the constitutional provision? If other circuit judges shall be

elected while the act is in force, and the Legislature should then repeal it, would its repeal affect the judges so elected and deprive them of the $1,200 yearly salary attached to their office at the time they were elected? In Thomas v. Hager, 120 Ky. 428, 86 S. W. 969, 27 Ky. Law Rep. 813, the court had this question before it: A statute was passed providing that magistrates holding examining courts should receive no compensation for their services unless the defendant was indicted by the grand jury. The act was held invalid as to officers elected before it was passed on the ground that their compensation could not be changed after their election. On the other hand, in Bright v. Stone, 43 S. W. 207, 20 Ky. Law Rep. 817, and Commonwealth v. Carter, 55 S. W. 701, 21 Ky. Law Rep. 1509, it was held that an act allowing the circuit·clerks pay for services for which no compensation was given when they were elected was invalid under the constitutional provision.

In holding the courts outside of their districts under the act, the circuit judges are simply discharging the duties imposed upon them by law. The act applies to the office. The person filling the office gets his authority by virtue of his office. The duty of holding the circuit courts outside of his district comes wholly from the act. If this were not so, there would be no obligation upon any circuit judge to serve as special judge outside of his district. The duty of a circuit judge under the act to hold a court outside of his district when directed by the Governor to do so, stands on precisely the same plane as his duty to hold the courts in his district; both are duties required by law. That an officer performing services outside of the duties of his office may receive compensation therefor is admitted. This is all that was decided in

Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897, or Flowers v. Logan County, 127 S. W. 512. The case of Converse v. United States, 21 How. 463, 16 L. Ed. 192, is simply to the same effect, and decides nothing more. This is not the case of an officer performing services unofficially in his private capacity. Here is an act imposing additional duties on an officer and allowing him additional compensation without regard to the amount of service he may render, and although he may in fact render no service as required by the act. If he renders any service, he renders it under the act. It is simply an additional duty imposed on the office, and this court has twice decided that the fact that additional duties have been imposed, does not warrant a change of the officer's compensation during his term of office. Jefferson County v. Waters, 114 Ky. 48, 70 S. W. 40, 24 Ky. Law Rep. 816; Board of Education v. Moore, 114 Ky. 640, 71 S. W. 621, 24 Ky. Law Rep. 1478. It is true, the circuit judges were not required to perform these services when they took the office, but they took it subject to such changes as the Legislature might make in its duties. Their duties may be changed, but their salary cannot be changed during their terms. The circuit judge who fails to discharge his duties as required by this act will be guilty of a misfeasance in office.

The opinion of the court rests on the ground that the holding of special terms outside of their districts is not a duty which the Legislature may impose on circuit judges; that their authority is limited by the Constitution to their districts. But the Constitution contains no such provision. Its only provision as to the jurisdiction of a circuit judge is section 126, which is as follows: "The jurisdiction of said court shall be

and remain as now established, hereby giving to the General Assembly the power to change it.''

In Kennedy v. Commonwealth, 78 Ky. 453, the court, disposing of the very objection on which the opinion here is rested—that the circuit judge's authority is by the Constitution limited to his district—said: ''The Constitution requires the General Assembly to provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside. Section 28, art. 4. The manner of providing for the contingency here contemplated is left wholly to the discretion of the General Assembly, provided no other provision of the Constitution be violated. That instrument requires a circuit judge to be elected in each district, and provides that no one shall be eligible to the office who has not resided in the district two years. But these provisions apply to the regular judges, and do not apply to special judges; nor is there anything in the Constitution which forbids the Legislature, in executing the constitutional mandate, to provide for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside, from directing the Governor to commission a judge of another circuit to attend and preside in a particular cause.'' To the same effect is Mengel Box Factory v. Jackson, 94 Ky. 472, 22 S. W. 854, 15 Ky. Law Rep. 289, decided under the present Constitution.

The opinion of the court is not only in the teeth of four well-considered previous opinions of the court, but in the face of the fact that this legislation, in one form or another, has been in force since the year 1858, under the same constitutional provisions we now have. When the Constitutional Convention in

1891 readopted them, it did so with the knowledge of the construction they had received; and when they readopted them in the same words, under the well-established rule of construction, they must be held to have adopted them in the sense they then had. Not only so, but hundreds of men have been convicted and punished in courts held by circuit judges under these acts. It was the more usual way of holding circuit courts in important criminal cases where the regular judge could not properly preside prior to the enactment of the Kentucky Statutes. The salaries of the circuit judges may be inadequate. It may be they should be better paid, but the court is bound by the law, no less than inferior tribunals. It cannot ignore its own decisions, when the Constitution has been re-adopted in the same words in view of the construction the court had placed upon it. The court is in error when it says "the duties of special judge have never been discharged by regular circuit judges." It has been done in courts having more than one judge under the present Constitution. Under the former Constitution, containing precisely the same provisions, the duty was discharged by all the circuit judges. This error of fact is the foundation of the opinion. The act confers on appellees no new office. A special circuit judge is simply a circuit judge for the time. Appellees are circuit judges under the act just as they were before. The act only requires them to exercise their functions outside of their districts under certain conditions.

It is conceded in the opinion that the Legislature may add a county or counties to a circuit judge's district, and that the Legislature may not for this in-

crease his salary; but what is the difference between requiring a circuit judge to hold three courts a year in two counties not originally in his district, and requiring him to hold special terms in these or other counties outside of his district? When circuit judges shall be elected while this act is in force, they will be entitled to a salary of $4,200 a year—$3,000 for holding the courts in their districts, and $1,200 for holding the courts outside of them. The $1,200 a year will be one of the perquisites of the office, and can no more be taken from them during their terms by legislative action than the $3,000 allowed for holding courts in the district. The opinion rests solely on the ground that the holding of special terms was not within the jurisdiction of circuit judges before the act was passed. But the Legislature regulated their jurisdiction. And may not the power that created, change their jurisdiction? A mere change in their jurisdiction will not warrant a change in their salary during the terms for which they were elected. The Legislature, when it defined their jurisdiction, might have imposed on them the duty of holding other courts when the regular judge was absent or could not properly preside. It in fact did so in the case of the courts having more than one judge, and this was held valid in Mengel Box Factory v. Jackson, 94 Ky. 472, 22 S. W. 854, 15 Ky. Law Rep. 289. Manifestly, what the Legislature did then as to one class of counties, it could have provided as to all other counties, as it had done before, if it had seen fit. And what it could have done in the first instance, is not of a different character when done now; it is simply the exercise of a legislative power to define the duties of an office.

The opinion of the court rests on the ground that the circuit judges, in holding the special terms, are acting outside of their duties. It fails to distinguish between a duty not required by law and one that is required by law when the service is rendered, but was not required by law when the officer was elected. What the Legislature might have done at the beginning in defining the duties of the office, it may do afterwards. Having authority under the constitution, as has been expressly decided, to impose these duties on the circuit judges, its exercise of its constitutional authority is no ground for a change in their salary, during their terms, a thing which by the Constitution is forbidden. To say otherwise is to say that whenever an officer's duties are increased or diminished, his salary may be changed, which would be to give the constitutional provision no practical effect. Section 133 of the Constitution provides that the compensation of circuit judges shall be "equal and uniform throughout the State." Section 59 also provides: "The General Assembly shall not pass local or special acts * * * to regulate the jurisdiction, or the practice, or the circuits of the courts of justice * * * or compensation of the officers thereof." Under these provisions the Legislature has no power to provide that certain circuit judges shall receive out of the state treasury a salary of $4,200 a year, while others receive only $3,000. We have often held invalid acts giving officers in certain counties a greater compensation than allowed the same officers in other parts of the state. The same principle must be applied in the case of the circuit judges. In the opinion of the court its conclusion seems to be rested on the idea that the act creates the office of special circuit judge, and confers it upon certain circuit

judges of the state. But all ground for this position is taken away when it is shown that these are duties which the Legislature might in the first instance have imposed on them. The act does not purport to create a new office; for if that were the case the judges would be entitled to the salary of $1,200 a year only from the time they accept the office and qualify; but under the act each of them is entitled to the additional compensation from the time it takes effect, although he may never be commissioned or act as special judge. It is, therefore, apparent, that the additional compensation is given to them as circuit judges. The rights of each of appellees under the act depend on his being circuit judge. If he ceases to be circuit judge, he cannot act as special judge. His powers under the act are only incidents of the office of circuit judge and have no separate existence.

The constitutional provision is worth nothing if it may be evaded. It is the duty of the courts to condemn evasions of the Constitution no less than open violation of its provisions. The act in question is a palpable evasion of the constitutional provisions. Its plain purpose was to increase the salaries of the circuit judges $1,200 a year during the term for which they were elected. They get the $1,200 although they do not hold a single court outside of their district during the year. If the purpose of the act has been simply to provide for the holding of the special terms of court, it would seem that it would have made the additional pay of the circuit judges to depend on the amount of extra work which they did, and no explanation can be given for giving each circuit judge an additional salary of $1,200 a year regardless of the work he may do, unless it was the purpose of the act to increase the salaries of the circuit judges during the

term for which they were elected. It is earnestly insisted that the cases in which it has been held that justices of the peace when acting as committees of the fiscal court may receive $3 a day for their services, although they were elected before the act allowing this compensation was passed, cannot be distinguished from this case. But the difference is very palpable. When a magistrate acts as committee of the fiscal court, he is not acting as a justice of the peace, or discharging any duty imposed on that office. Any private person may be a committee of a fiscal court. A private person cannot hold a circuit court. When holding a circuit court outside of his district, under the act in question, the circuit judge is discharging a duty imposed upon him by law. No duty is imposed by law on magistrates to act as committees of the fiscal court. The act allowing the committees of the fiscal court to receive pay at $3 a day, imposes no new duty on magistrates; it simply removes to this extent a statutory restriction forbidding members of the fiscal court from contracting with each other. If a private person acts as a committee of a fiscal court he can receive any compensation agreed on between him and the fiscal court; but a member of the court can receive only $3 a day. That act does not touch the office nor the officer. It would be similar to the act before us if the Legislature had provided that nobody but the magistrates should act as committees of the fiscal court, and that the magistrates should receive $3 a day for their services. If it had so provided it would have made the right to act on the committee to depend upon the office, and the officer in acting on the committee would have been discharging a duty imposed upon him by law. That is this case.

This court has in a long series of opinions upheld the constitutional provision, and has set its face against all efforts to evade it. It is very unfortunate that now a method is sustained by which in future this provision of the Constitution may be in all cases evaded; for in every case it may be provided by law that the officer in another name shall do certain things not before required of him, and for these things shall receive such compensation as the Legislature may be pleased to bestow out of the public treasury. If such is to be the fate of the constitutional provision, it will be far simpler and better to blot it out; for to tolerate evasions of it is but to blunt the public conscience, and to open the door for other attacks upon that instrument which is the foundation of our government.

I therefore dissent from the opinion of the court.

O'REAR, J., concurs in this dissent.